IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ERICA SELSHTUT,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:11-cv-1312 |
| | ) |
| **NORTHWEST HOME CARE, INC., and** | ) JURY DEMANDED |
| **ARIS HOME HEALTH, INC.** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

NOW COMES the Plaintiff, ERICA SELSHTUT ("Selshtut"), by and through her attorneys, The Howard Law Firm LLC, for her Complaint against NORTHWEST HOME CARE, INC. ("NWHC) and ARIS HOME HEALTH, INC ("Aris", collectively with NWHC "Defendants"), states:

### INTRODUCTION

1. Selshtut seeks damages and other relief pursuant to the Family and Medical Leave Act, 29 U.S.C. A § 2601, et. seq. (the "Act"), arising out of Defendants' failure to allow Selshtut to return to work and termination of her employment following her approved leave under the Act resulting from her pregnancy and the subsequent birth of her child.

### JURISDICTION AND VENUE

2. This Court has original jurisdiction over the claims asserted herein pursuant to 28 U.S.C.A. § 1331, as said claims are for violations of the laws of the United States.

3. Venue is proper before this Court because:

    a.    Defendants each reside in this judicial district and are subject to personal jurisdiction in this judicial district;

    b.    the events and omissions giving rise to the claims alleged herein occurred in this judicial district; and

    c.    each of the Defendants is and may be found in this judicial district.

## PARTIES

4.    Selshtut is over the age of 18 and is a resident of Lake County, Illinois.

5.    NWHC is a corporation that:

    a.    was formed and exists pursuant to the laws of the State of Illinois;

    b.    was incorporated on June 14, 2005; and

    c.    maintains its principal place of business at 3335 Arlington Heights Road, Suite A, Arlington Heights, Illinois (the "Office").

6.    Aris is a corporation that:

    a.    was formed and exists pursuant to the laws of the State of Illinois;

    b.    was incorporated on January 12, 2010; and

    c.    maintains its principal place of business at the Office.

## BACKGROUND FACTS

7.    NWHC provides home health care services to people in Illinois (the "Home Health Services").

8.    NWHC provides Home Health Services through people it employs as either homemakers ("Homemakers") or certified nursing aids ("CNAs" and collectively with the Homemakers the "Home Health Employees").

9. Prior to the formation of Aris, NWHC employed office staff (the "NWHC Office Staff").

10. Prior to the formation of Aris, the NWHC Office Staff:

   a. managed the Home Health Employees; and

   b. administered NWHC's business concerns.

11. Based upon information and belief, throughout all of 2009 and 2010, NWHC employed 50 or more people.

12. Based upon information and belief, at all times relevant, Elena Rom ("Rom"):

   a. was an owner of NWHC;

   b. was the corporate secretary for NWHC;

   c. was the agency administrator for NWHC;

   d. was responsible for hiring NWHC's employees;

   e. was responsible for firing NWHC's employees;

   f. was responsible for determining pay levels for NWHC's employees; and

   g. signed the paychecks for NWHC's employees.

13. On or about June 23, 2009, Rom hired Selshtut as a receptionist and administrative assistant for NWHC (the "Initial Hiring").

14. In September 2009, Rom promoted Selshtut to the position of Home Care Supervisor for NWHC.

15. Prior to the formation of Aris, the position of Home Care Supervisor was a management position at NWHC.

16. Prior to the formation of Aris, the Home Care Supervisor was part of the NWHC Office Staff.

17. Prior to the formation of Aris, Selshtut's duties and responsibilities as Home Care Supervisor for NWHC included:

   a. accepting cases from the Illinois Department of Public Health and private sources;

   b. monitoring the provision of services according to a client's authorized plan of care;

   c. preparing service calendars;

   d. answering phones and assisting clients with questions;

   e. providing human resources representation;

   f. providing input for performance evaluations for Home Health Employees;

   g. providing schedules to Home Health Employees;

   h. monitoring receipt procedures in the conduct of essential shopping errands as stated in the plan of care for clients;

   i. monitoring required documentation that is submitted to NWHC's billing department, such as time sheets that Home Health Employees complete to support the units of service performed by the Home Health Employees in connection with requests for reimbursement;

   j. providing emotional support and encouragement to clients and Home Health Employees;

   k. assisting with in-service training;

l. conducting weekly conferences over the telephone or in person with Home Health Employees;

m. supervising Home Health Employees relative to their compliance with requirements for time sheets and attendance;

n. conducing in-home visits with clients to provide training and assistance in connection with client care;

o. acting as a liaison between Home Health Employees and referral sources;

p. assisting Home Health Employees to develop appropriate skills and attitudes in order to best serve clients;

q. maintaining personal files for Home Health Employees;

r. reporting daily activity to the Head Home Care Supervisor;

s. assisting the office manager and administrator with projects;

t. informing home care aid of new client assessments over the telephone or in person;

u. conferencing with and coordinating client care with agencies and facilities involved in client care;

v. initiating and/or participating in client staffing decisions;

w. providing input to the case manager on needed client services;

x. resolving family-client conflicts;

y. preparing monthly written reports for active cases/clients;

      z.      preparing and reviewing reports quarterly, and planning and documenting contact and quarterly face-to-face conferences with Home Health Employees;

      aa.      performing quality assurance by making and documenting semi-annual in-home supervisory visits to the homes of clients;

      bb.      reporting to upper management on the condition of clients and the care being provided by the Home Health Employees;

      cc.      interviewing people who were seeking to become employed as an Home Health Employee; and

      dd.      performing background checks and confirming references for people who were seeking to become one an Home Health Employee.

The allegations in subparagraphs a. through dd. are hereinafter referred to as "Selshtut's Duties."

    18.    On January 12, 2010, Aris was incorporated (the "Aris Incorporation").

    19.    Selshtut was not involved in, was informed of and played no role in the Aris Incorporation.

    20.    Selshtut's Duties did not change following the Aris Incorporation.

    21.    In March 2010, Rom promoted Selshtut to the position of Head Home Care Supervisor (the "Second Promotion").

    22.    As Head Home Care Supervisor:

      a.      Selshtut continued to be responsible for performing Selshtut Duties; and

      b.      Selshtut became responsible for coordinating with State of Illinois representatives from the Illinois Department of Public Health, the Illinois

        Department of Human Services and other State of Illinois affiliated agencies pertaining to the Home Health Services performed by Home Health Employees (the "Additional Duties").

23. The position of Head Home Care Supervisor is a management position.

24. In March 2010, after the Second Promotion, Rom informed Selshtut and the other employees within the Office Staff that:

    a. insurance benefits, which previously had not been provided, were going to be provided to Selshtut and the other employees within the Office Staff (the "Health Benefits");

    b. Selshtut and the other employees within the Office Staff would only be responsible for paying half of the premium for the Health Benefits;

    c. Selshtut and the other employees within the Office Staff would begin receiving their paychecks from Aris; and

    d. Selshtut's business card, the business cards of the other employees within the Office Staff, Selshtut's Duties including the Additional Duties, the duties of the other employees within the Office Staff and all other aspects of their collective employment would otherwise remain the same.

The allegations in this paragraph are hereinafter referred to as the "March Meeting".

25. Following the March Meeting, Selshtut's Duties and Additional Duties as Head Home Health Care Supervisor remained the same as they were prior to the March Meeting.

26. At all times prior to and after the March Meeting, Rom was Selshtut's direct supervisor.

7

27. Based upon information and belief, Aris was formed to centralize the management of NWHC.

28. Based upon information and belief, Aris does not perform any Home Health Services.

29. Aris operates out of the Office in the same space as NWHC.

30. Aris and NWHC have the same telephone number.

31. The same people who are corporate officers for NWHC are corporate officers for Aris.

32. Aris' only employees are the Office Staff.

33. Following the March Meeting, the same individuals who were part of the Office Staff continued to manage and control the operation of NWHC.

34. Based upon information and belief, Rom:

    a. is an owner of Aris;

    b. is the corporate secretary for Aris;

    c. is the agency administrator for Aris;

    d. is responsible for hiring Aris' employees;

    e. is responsible for firing Aris' employees; and

    f. is responsible for determining pay levels for Aris' employees.

35. Aris and NWHC's business operations are centralized.

36. Aris and NWHC's labor relations are centralized.

37. Aris conducts and manages NWHC's business, including, but not limited to, by managing the Home Health Employees.

38. Paychecks to employees of NWHC and Aris, including the Home Health Employees and the Office Staff, are drawn from the same bank.

39. Paychecks to employees of NWHC and Aris are signed by the same person, Rom.

40. In late July 2010:

    a. Selshtut informed Rom that Selshtut was pregnant;

    b. Selshtut informed Rom that Selshtut would be exercising Selshtut's rights under the Act to take leave following the birth of her then expectant child; and

    c. Rom informed Selshtut that Selshtut would receive one month of paid leave during Selshtut's leave under the Act.

41. On September 12, 2010 Selshtut:

    a. went into labor; and

    b. spoke with Rom over the telephone; and

    c. informed Rom that Selshtut was in labor.

42. On September 13, 2010:

    a. Selshtut gave birth to a baby boy (the "Birth");

    b. informed Rom by text message of the Birth; and

    c. informed Rom by text message that Selshtut would be starting her maternity leave under the Act immediately.

43. On september 15, 2010, two days after the Birth, Rom spoke with Selshtut by telephone (the "September 15 Call").

44. During the September 15 Call, Rom informed Selshtut that:

    a.    Selshtut was no longer the Head Home Care Supervisor;

    b.    Selshtut no longer held any management position (the "Demotion"), but provided no reason for the Demotion;

    c.    as a result of the Demotion, Selshtut was no longer entitled to receive one month paid leave; and

    d.    as a result of the Demotion, Selshtut would only receive two weeks of paid leave.

45.    On September 16, 2010, Selshtut visited NWHC's office (the "September 16 Visit").

46.    During the September 16 Visit:

    a.    Selshtut informed Rom that Selshtut wanted to return to work when her two weeks of paid leave expired;

    b.    Rom informed Selshtut that Selshtut would not be allowed to return to work in two weeks when Selshtut's paid leave expired; and

    c.    Rom informed Selshtut that Selshtut must remain at home for an entire month following the Birth.

47.    On October 1, 2010, Selshtut visited NWHC's office (the "October 1 Visit").

48.    During the October 1 Visit:

    a.    Selshtut pleaded with Rom to allow Selshtut to resume work immediately;

    b.    Selshtut informed Rom that Selshtut needed income and Health Benefits to support her newborn son;

    c.    Rom terminated Selshtut's employment with NWHC and/or Aris;

      d.      Rom told Selshtut that if Selshtut wanted to maintain the Health Benefits, Selshtut would have to pay the full premium for the Health Benefits; and

      e.      Selshtut stopped receiving any contribution from NWHC and/or Aris toward the premium for the Health Benefits.

49. Prior to taking leave under the Act, Selshtut had faithfully and satisfactorily performed any and all duties and responsibilities pertaining to her employment with NWHC and/or Aris.

50. After the October 1 Visit, NWHC and/or Aris began placing advertisements seeking to employ an individual to perform Selshtut's Duties, including the Additional Duties.

## COUNT I - VIOLATION OF THE ACT BY NWHC AND ARIS

51. Selshtut incorporates the averments in paragraphs 1 through 50 as if they were set forth fully herein.

52. At all times relevant, NWHC engaged in commerce and/or an activity affecting commerce.

53. At all times relevant, Aris engaged in commerce and/or activity affecting commerce.

54. NWHC and Aris are an integrated employer under the Act.

55. In the alternative, Aris is a successor to NWHC under the Act.

56. At all times relevant, NWHC and/or Aris individually or, in the alternative, as either an integrated employer and/or a successor, employed 50 or more employees for each working day during each of the 20 or more calendar workweeks in the calendar year preceding the Termination.

11

57. NWHC is an employer under the Act.

58. Aris is an employer under the Act.

59. In the twelve months prior to the Termination, Selshtut performed more than 1,250 hours of service for NWHC and/or Aris.

60. Selshtut is a protected person and eligible employee under the Act.

61. Selshtut was entitled to leave under Section 2612 of the Act (29 U.S.C.A. § 2612).

62. Selshtut provided adequate notice of her intent to take leave under the Act.

63. NWHC and/or Aris denied Selshtut benefits to which she is entitled under the Act.

64. At all times relevant, Selshtut satisfied any and all legitimate business expectations of of NWHC and/or Aris and was repeatedly promoted.

65. NWHC and/or Aris violated Section 2614 and 2615 of the Act (29 U.S.C.A. § 2614 and 29 U.S.C.A. § 2615) when they individually and/or collectively upon her request to return from such leave:

    a. failed to restore Selshtut to the position of employment she held when her leave under the Act commenced; and

    b. failed to restore Selshtut to an equivalent position with equivalent benefits, pay and other terms and conditions of employment when her leave under the Act commenced.

66. Following and as a result of having taken leave under the Act, Selshtut suffered an adverse employment event by, including but not limited to, losing her employment with NWHC and/or Aris.

67. Since the Termination, Selshtut has been unable to find employment despite her diligent efforts to do so.

68. Since the Termination, Selshtut has lost the income she generated as an employee of NWHC and Aris.

69. Since the Termination, Selshtut has lost the Health Benefits she received as an employee of NWHC and/or Aris.

70. As a result of Defendants' conduct, the employer/employee relationship is so hostile that there is no longer any possibility of a productive and amicable relationship between Selshtut and Defendants.

71. As a result of Defendants' conduct, Defendants are liable to Selshtut in an amount equal to:

   a. all wages, salary, employment benefits, or other compensation denied or lost to Selshtut by reason Defendants' violations of the Act;

   b. interest on the amount described in subparagraph "A" above calculated at the prevailing rate;

   c. liquidated damages equal to the sum described in subparagraphs "A" and "B" above;

   d. all attorneys' fees, expert witness fees and other costs of the action incurred by Selshtut; and

   e. equitable relief, including but not limited to front pay for a period of time to be determined by the Court or Jury to be appropriate.

WHEREFORE, ERICA SELSHTUT requests that this Honorable Court enter judgment in her favor and against NORTHWEST HOME CARE, INC., and ARIS HOME HEALTH, INC. and award her an amount greater than $500,000 for:

A.  all wages, salary, employment benefits, or other compensation denied or lost to Selshtut by reason of the NWHC's and Aris' violations of the Act;

B.  interest on the amount described in subparagraph "A" above calculated at the prevailing rate;

C.  liquidated damages equal to the sum described in subparagraphs "A" and "B" above;

D.  all attorneys' fees, expert witness fees and other costs of the action incurred by Selshtut;

E.  equitable relief, including but not limited to front pay for that period of time to be determined by the Court or Jury to be appropriate; and

F.  any all such other and further relief that this Court deems just and proper.

Dated: **February 24, 2011**  Respectfully submitted,
　　　　　　　　　　　　　　　　　　　　　　**ERICA SELSHTUT**


By: /s/ David A. Howard
Erica Selshtut's attorney

David A. Howard
The Howard Law Firm LLC
307 North Michigan Avenue
Suite 1214
Chicago, Illinois 60601
T: (312) 372-7048
F: (312) 372-9239
E: dhoward@howardlawllc.com
*Counsel for the Defendants/Plaintiffs*